IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BONNIE THURSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00832 (WBP) |
| | ) |
| WASHINGTON METROPOLITAN | ) |
| AREA TRANSIT AUTHORITY, also | ) |
| known as WMATA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion to Exclude Plaintiff's Liability Expert and for Summary Judgment. ("Motion"; ECF No. 41.) Following extensive briefing, the parties presented oral argument on the Motion on March 14, 2025. For the reasons below, WMATA's Motion for Summary Judgment is DENIED and WMATA's Motion to Exclude Plaintiff's Liability Expert is GRANTED in part and DENIED in part.

I.

On January 4, 2023, Plaintiff Bonnie Thurston, then 74 years old, was travelling on a WMATA Metrorail train to Reagan National Airport with her grandchildren Hailey Thurston and Roger Thurston. (ECF No. 43 ¶¶ 1-3.) As the Metrorail train approached the Reagan National Airport Station, the train stopped prior to fully pulling into the station. (*Id.* ¶ 4.) Once the train stopped, there was neither an announcement that the train had reached its destination nor an announcement that the doors were opening. (*Id.* ¶ 5.) Seeing the station platform through the window of the train, Ms. Thurston stood up without holding on to any internal train supports, and

the train subsequently moved forward and fully berthed at the Reagan National Airport Station. (ECF No. 43 ¶¶ 6-8.) When the train moved forward, Ms. Thurston fell and sustained injuries to her left femur and hip. (*Id.* ¶ 11; ECF No. 1 ¶ 15.) The two main issues with respect to liability are (1) whether the appropriate standard of care required the train operator to announce to the passengers that he was going to move the train and re-berth it in the station, which would have warned the passengers to secure themselves (ECF No. 42 at 2), and (2), if an announcement was required, whether the train operator provided it to the passengers. (ECF No. 43 ¶ 9.)

II.

On May 17, 2024, Ms. Thurston sued WMATA alleging one count of negligence. (ECF No. 1.) After discovery closed, WMATA moved to exclude Plaintiff's liability expert, Dr. Carl Berkowitz, and for summary judgment. (ECF No. 41.) WMATA argues that Dr. Berkowitz should be excluded from testifying at trial because, in WMATA's opinion, he has failed to articulate a national standard of care and because his opinions are otherwise without factual support. (*Id.* ¶ 4.) WMATA also argues that, if the Court excludes Dr. Berkowitz from testifying, then Ms. Thurston would not have an expert to establish the standard of care required for her claim, and it would be entitled to summary judgment in its favor. (*Id.* ¶ 5.) Alternatively, WMATA argues that, even if Dr. Berkowitz is permitted to testify at trial, WMATA is still entitled to summary judgment based on insufficient evidence of an actionable "jerk and jolt" onboard the train. (ECF No. 42 at 17-19.)

Ms. Thurston opposes the Motion arguing that Dr. Berkowitz has the proper experience to testify on the standard of care for common carriers and, even if Dr. Berkowitz did not testify at trial, WMATA is still not entitled to summary judgment because disputes of material facts exist. (ECF No. 51 at 11, 15-20.)

III.

Federal Rule of Civil Procedure 56(a) requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Ultimately, the Court must decide whether the record evidence presents a genuine issue of material fact such that a trial is required or whether the evidence it is so one-sided that one party must prevail as a matter of law. *Rhoades v. United States Army Corps of Engineers*, No. 3:22-cv-728-HEH, 2023 WL 3981271, at *3 (E.D. Va. June 13, 2023).

A material fact is one that may impact the outcome. *Id*. A genuine issue is a fact that is fairly doubted by evidence. *CMA CGM S.A. v. Leader Int'l Express Corp.*, 474 F. Supp. 3d 807, 814. The party opposing a motion for summary judgment must identify with specificity the facts with genuine issues for trial. *Id.* When deciding a motion for summary judgment, the Court must view all the facts and draw inferences in favor of the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreeve*, 535 F.3d 225, 230 (4th Cir. 2008).

IV.

Under the WMATA Compact, WMATA is liable for torts that its employees commit "in the conduct of any proprietary function, in accordance with the law of the applicable [s]ignatory (including rules on conflicts of laws)." VA. CODE § 33.2-3100. For tort actions, "Virginia's choice of law rule selects the law of the state" where the alleged tort took place. *Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 777 (E.D. Va. 2012), *aff'd,* 533 F. App'x 200 (4th Cir. 2013). Because this incident occurred in Arlington, Virginia, Virginia's tort law governs Ms. Thurston's negligence claim.

A.

Expert testimony is needed when issues fall "beyond the realm of common knowledge and experience of a lay jury." *Benedict v. Hankook Tire Co.*, 286 F. Supp. 3d 785, 791 (E.D. Va. 2018) (quoting *Beverly Enters.–Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (1994)). If an issue lies within a jury's common knowledge and experience, then expert testimony is unnecessary. *Coston v. Bio-Med. Applications of Va., Inc.*, 275 Va. 1, 5 (2008). In negligence cases that require expert testimony, a claim will fail if the expert does not properly articulate the standard of care. *See Benedict*, 286 F. Supp. 3d at 791. The operation of a Metro train generally is likely not within the common knowledge or experience of a lay jury. The need for expert testimony to discuss whether a train operator must make an announcement prior to "re-berthing" a train that has stopped partially within a station platform is a closer call, but the Court finds that such expert testimony would be useful to the jury's understanding of the issue.

1.

WMATA argues that Dr. Berkowitz's testimony should be excluded because he does not properly articulate the national standard of care. (ECF No. 42 at 8.) Ms. Thurston argues that the Virginia standard for common carriers applies to this Virginia action, not a national standard of care and, regardless, that Dr. Berkowitz's proposed testimony satisfies the national standard of care. (ECF No. 51 at 11.)

Some jurisdictions—like the District of Columbia—require a plaintiff in a negligence action to show that a common carrier defendant violated a national standard of care. *See Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 39 (D.C. Cir. 2014). The national standard of care "must describe a specific standard that has been accepted in the industry." *Casey v. McDonald's Corp.*, 880 F.3d 564, 569 (D.C. Cir. 2018); *see also Clark v. Dist. of Columbia*, 708 A.2d 632, 635 (D.C. 1997) (explaining that the national standard of care is the standard of

care that is nationally recognized and followed by other entities). Virginia, however, has not recognized such a national standard of care in common carrier tort actions, and the Court will not apply the national standard of care here.

In Virginia, the standard of care for common carriers is "the highest degree of practical care for the safety of [the common carrier's] passengers." *Jones v. Wash. Metro. Area Transit Auth.*, 378 F. Supp. 2d 718, 721 (E.D. Va. 2005) (quoting *Crist v. Wash., Va. & Md. Coach Co.*, 196 Va. 642, 645 (1955)) (internal quotations omitted). Accordingly, common carriers are liable to passengers for the "slightest negligence." *Shamblee v. Virginia Transit Co.*, 132 S.E.2d 712, 714 (Va. 1963). This heightened standard of care has limits, and the heightened standard "means no more than every care which is practicable by common carriers." *Tran Le v. Target Stores, Inc.*, No. 1:18-CV-520, 2019 WL 441968, at *2 (E.D. Va. Jan. 18, 2019) (quoting *Shamblee*, 132 S.E.2d at 714).

Because Virginia law does not recognize a national standard of care, it is inconsequential whether Dr. Berkowitz can properly articulate it. Dr. Berkowitz only is required to communicate to the jury what constitutes the highest degree of practical care for the safety of a common carrier's passengers, and the Court holds that his experience allows him to do so.

In conveying his opinions about Virginia's standard of care, Dr. Berkowitz may not reference on direct examination WMATA's standard operating procedures ("SOPs"). For the reasons more fully explained in the Court's order of today's date relating to WMATA's separately filed Motion *in Limine*, under well-established Virginia law, an entity cannot, by creating its own private rules, set the standard of care that it owes to others. *See Virginia Ry. & Power Co. v. Godsey*, 117 Va. 167, 183 (1915). The Fourth Circuit has recognized this well-established Virginia rule and has determined that it is "sufficiently bound-up with state policy so

as to require its application in federal court" and to preclude the introduction into evidence of a party's standard operating procedures. *See Murphy v. United States*, 383 Fed. Appx. 326, 335 (2010) (holding that procedure manuals cannot be introduced to show standard of care).

2.

WMATA also argues that Dr. Berkowitz's opinions are not supported by a sufficient factual basis as required by Federal Rule of Evidence 702. (ECF No. 42 at 6.) Federal Rule of Evidence 702 allows for the admission of expert testimony "in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVIDENCE 702. "Courts have condensed these requirements into two primary inquiries (1) whether the proposed expert's testimony is relevant; and (2) whether [the testimony] is reliable." *Vir2us, Inc. v. Sophos Inc.*, No. 2:19CV18, 2025 WL 299392, at *3 (E.D. Va. Jan. 24, 2025). Trial courts have discretion in determining the reasonable measures of reliability. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017).

Experience alone, or experience combined with knowledge, skill, training, or education, can provide a sufficient foundation for expert testimony. *See Radiance Found., Inc. v. Nat'l Ass'n for Adv. of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013). But if an expert relies on his experience, he must explain how his experience "leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Id.*

6

As reflected in his report and his deposition testimony, Dr. Berkowitz's expert opinions largely come from his experience having worked for various transit authorities, his belonging to transit-related committees, and his long-time engagement with the public transportation community. (ECF No. 42-12 at 11; ECF No. 51-11 at 3, 5.) Dr. Berkowitz also speaks with others in the transit industry about safety. (ECF No. 51-11 at 3, 5, and 8.) His expert opinions reflect his prior reading of transit systems' standard operating procedures and training manuals. (ECF No. 51-11 at 8.) With his knowledge and experience in the industry, Dr. Berkowitz may testify about the standard of care for a train operator who needs to re-berth a train that has stopped partially within a train station platform. As more fully discussed on the record, Dr. Berkowitz does not have a sufficient basis to testify about, and thus is precluded from testifying about, the other topics included in his expert report, including falling, walking and falling, jerk rates, failures, and national standards of care. Dr. Berkowitz also is prohibited from testifying about any factual conclusions he has reached about the incident at issue, as that would invade the province of the jury.

B.

WMATA argues that, even if Dr. Berkowitz's testimony is not excluded, the Court should enter summary judgment in its favor because of well-established authority relating to "jerks" or "jolts" on mass transit. (ECF No. 42 at 17.) In *Shamblee*, the Supreme Court of Virginia held that common carriers are not liable for "the jerks and jolts which are necessarily incident to the use" of a train, but a common carrier can be liable if the "jerks or jolts are unnecessary or unusually sudden or violent." *Shamblee,* 204 Va. at 594. The Court finds that this issue is disputed and cannot be determined at summary judgment.

There are also several other genuine disputes of material fact. First, there is a dispute about whether the train operator made an announcement before repositioning the train. (ECF No. 42 at 2.) Second, there is a dispute over whether the train jerked its passengers. (ECF No. 56 at 13; ECF No. 42-5.) Last, there is a dispute about whether it was clear to passengers that the train was not fully berthed. (ECF No. 42 at 2; ECF No. 51 at 20.) Therefore, because of these material disputes, the Court will not enter summary judgment on these issues.

V.

Accordingly, having reviewed the briefs, considered the parties' arguments at the March 14, 2025, hearing, and for the reasons stated here and from the bench, it is hereby

ORDERED that WMATA's Motion for Summary Judgment is DENIED; and it is further

ORDERED that WMATA's Motion to Exclude Plaintiff's Liability Expert is GRANTED in part and DENIED in part and that Dr. Carl Berkowitz may testify only about the standard of care required of a train operator who needs to reposition or "re-berth" a train that has come to a stop partially within a station platform.

Entered this 14th day of March 2025.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia